**In re MIDWEST BOILER & ERECTORS, INC., Debtor.**

**John V. LaBARGE, Jr., Trustee In Bankruptcy, Plaintiff,**

**v.**

**TUBULAR STEEL, INC., Defendant.**

**Bankruptcy No. 80–02673(3).**
**Adv. No. 81–0423(3).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Nov. 8, 1985.

---

John V. LaBarge, Jr., Kirkwood, Mo., trustee.

David M. Korum, Kirkwood, Mo., for trustee.

John W. Moticka, St. Louis, Mo., for Tubular Steel, Inc.

Charles M. Shaw, Clayton, Mo., for debtor.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

Plaintiff, the trustee in these proceedings, brought an action against Defendant, Tubular Steel, Inc., under 11 U.S.C. §§ 547 and 550 to avoid and recover an alleged preferential transfer to the Defendant from the Debtor, Midwest Boiler & Erectors, Inc. At the time of the hearing, the parties agreed that the matter would be submitted upon a written stipulation of facts and statements of the issues. No oral testimony was presented and the parties subsequently filed post-trial memoranda of law.

The debts in this matter are based upon two invoices prepared by the Defendant and sent to the Debtor: Invoice No. 41565, dated May 9, 1980 in the amount of $2,549.08; and Invoice No. 42648, dated May 24, 1980 in the amount of $52.31. On September 8, 1980, the Debtor issued and delivered to the Defendant its check numbered 599 in the amount of $2,549.08. On the same day, the Defendant deposited the check in its bank. Two days later, on September 10, 1980, the check cleared the Debtor's bank. The voluntary petition for relief under Chapter 7 was filed in this case on December 8, 1980.

The parties have stipulated that the Debtor's check was delivered to the Defendant in payment of an antecedent debt while the Debtor was insolvent; and that thereby, the Defendant received more than it would have received in a Chapter 7 case had the transfer not been made, and had the Defendant otherwise received payment of its debt to the extent provided by Title 11. The parties have also stipulated that the sole issue to be determined by the Court concerns the disagreement as to when the transfer of assets occurred. The

Debtor's check was issued and delivered on September 8, 1980, which was 91 days prior to the Debtor's filing of its petition in this case. The Debtor's bank paid the check from the Debtor's account on September 10, 1980, which was 89 days before the filing of the Bankruptcy petition. Therefore, the question is whether the transfer of assets was completed when the Debtor issued and delivered its check to the Defendant, or when the Debtor's bank paid the check from the Debtor's account. Upon review of the record and the relevant authorities, it is determined that the transfer occurred upon payment by the Debtor's bank, and that, therefore, a preferential transfer occurred pursuant to 11 U.S.C. § 547.

■ Although the issue of when a transfer is complete is a federal question, the Bankruptcy court must make its determination in accordance with state law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–370, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945); *Olsen-Frankman Livestock Marketing Service v. Citizens National Bank,* 4 B.R. 809, 812–813 (D.Minn.1980); *In re Conner,* 733 F.2d 1560 (11 Cir.1984); *Matter of Isis Foods, Inc.,* 37 B.R. 334, (Bkrtcy. W.D.Mo.1984); *In re Mailbag Intern, Inc.,* 28 B.R. 905, 10 B.C.D. 496 (Bkrtcy.Conn. 1983).

The Bankruptcy Reform Act of 1978 provides a broad definition of a transfer. Section 101(48) states that "transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or an interest in property, including retention of title in a security interest and foreclosure of the debtor's equity in redemption." The delivery of a check in itself does not constitute a transfer as defined by § 101(48). Under the law of negotiable instruments, a check is only an unconditional promise to pay. The title to the amount of money indicated upon the face of a check is not transferred by the issuance of the check. § 400.3–104, RSMo (1978). A check directs the bank to transfer funds from the drawer's account to be paid to the named payee;

it does not act as an assignment of those funds. § 400.3–409(1), RSMo (1978); see *Klein v. Tabatchnik,* 610 F.2d 1043, 1049 (2d Cir.1979); *Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288, 1293 (7th Cir. 1974); *In re Sportsco,* 12 B.R. 34, 35–36, 7 B.C.D. 1025 (Bkrtcy.D.Ariz.1981).

■ The general rule is that acceptance of a note, bill or check does not constitute payment of an underlying debt. *Drew v. Chrysler Credit Corp.,* 596 F.Supp. 1371 (W.Dist.Mo.1984); citing *Hall v. Knapp,* 552 S.W.2d 299, 304 (Mo.App.1977). Under Missouri law, a check does not constitute a transfer and delivery of the funds until it is paid. *Matter of Isis Foods, Inc.,* supra, 37 B.R. at 336.

■ It is not delivery of the check, but rather its payment by the drawee bank which constitutes payment of the debt. *Griffin v. Priest,* 137 S.W.2d 685, 687–688 (Mo.App.1940); *Nicholson v. First Inv. Co.,* 705 F.2d 410 (11 Cir.1983); *Matter of Fasano/Harriss Pie Co.,* 43 B.R. 871, (Bkrtcy.W.Dist.Mich.1984); *Matter of Georgia Steel, Inc.,* 38 B.R. 829, 11 B.C.D. 1163 (Bkrtcy.M.D.Ga.1984); *In re Bob Grisset Golf Shoppes, Inc.,* 34 B.R. 320, (Bkrtcy.Va.1983); *Matter of Advance Glove Mfg. Co.,* 25 B.R. 521, 9 B.C.D. 1395 (E.D.Mich.1982).

Only a certified check constitutes an immediate assignment of funds and, therefore, is payment of the underlying debt. §§ 400.3–411 Mo.R.Stat.; see also, *State ex rel Chan Siew Lai v. Powell,* 536 S.W.2d 14 (Mo.1976); and *Matter of Kimball,* 16 B.R. 201, (Bkrtcy.M.D.Fla.1981).

The Defendant has argued that the Bankruptcy Code encourages the use of checks in business transactions. For that reason, the receipt of the Debtor's check on the 91st day before bankruptcy should constitute payment of the debt. In support of this argument, the Defendant refers to 11 U.S.C. § 547(c)(1), which recognizes an exception to the ability to set aside a preferential transfer if the transfer was a contemporaneous exchange for new value. The legislative history to § 547(c)(1) indi-

cates that Congress contemplated that delivery of a check in a contemporaneous exchange for new value would be payment of the debt itself, unless the check is later dishonored. 124 Cong.Rec. 11, 097 (Daily Ed. Sept. 28, 1978); and 17, 414 (Daily Ed. Oct. 6, 1978). This exception, however, does not apply in the situation presented in this case, because the parties have stipulated that the check here was delivered in payment of an antecedent debt and not for new value.

■ In its memorandum the Defendant raises for the first time the suggestion that the parties had agreed that receipt of the check on September 8, 1980 constituted immediate payment of the debt. The existence of such an agreement is a factual matter which has not been stipulated to by these parties. The record here contains no other evidence to support the Defendant's contention concerning such an agreement. Although payment by a check is normally a credit transaction, the parties can agree that such payment extinguishes the debt upon delivery. This agreement may be express, either orally or in writing, or it may be proven by facts and circumstances which clearly demonstrate that the parties had intended that the check constitute absolute payment of the debt. *Bartleman v. Humphrey*, 441 S.W.2d 335, 342–343 (Mo. 1969); *Komosa v. Monsanto Chemical Co.*, 317 S.W.2d 396, 402 (Mo.1958); *G.F.C. Corp. v. Nesser*, 273 S.W.2d 264, 267–268 (Mo.1954); *Weinberg v. Globe Indemnity Co.*, 355 S.W.2d 341, 350 (Mo. App.1962); *Griffin v. Priest*, supra, 137 S.W.2d at 687–688. Absent an agreement of this nature, it is presumed that the mere taking of a check is not a discharge of the indebtedness. *Silver v. Johnson*, 362 S.W.2d 757, 759 (Mo.App.1962).

■ Generally, payment is an affirmative defense, and the burden of proving it is on him who asserts it. The Defendant has argued in its memorandum that the circumstances surrounding receipt of the check support its contention that the parties had agreed that payment occurred upon delivery. However, the fact that a payee has issued a receipt or entered a bookkeeping credit, or performed other routine procedures, does not rebut the presumption that the check was not delivered in absolute payment. *G.F.C. Corp. v. Nesser*, supra, 273 S.W.2d at 267–268; *Silver v. Johnson*, supra, 362 S.W.2d at 759–760.

Therefore, for the reasons set out in this memorandum, judgment is being entered for the trustee and against this defendant, in the amount of $2,549.08.